[Crim. No. 9541.   Second Dist., Div. Three.   Oct. 7, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES PHILLIP JOHNSON, Defendant and Appellant.

Joseph Ash, Drake & Ackerman, William A. Drake and Harold J. Ackerman for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, Woodruff J. Deem, District Attorney, Edwin M. Osborne, Chief Criminal Deputy District Attorney, and Edwin L. Laing, Deputy District Attorney, for Plaintiff and Respondent.

FILES, J.—Defendant was charged by an information alleging a violation of Vehicle Code, section 23101,[1] commonly called felony drunk driving. He pleaded not guilty and waived a jury trial. Counsel then stipulated that the case be submitted to the court upon the police and laboratory reports, the transcript of the testimony taken at the preliminary examination, the transcript of the testimony of Dr. Brown taken in a proceeding to perpetuate testimony, and the testimony of Dr. Ridge. It was further stipulated that the sample of defendant's blood, tested following the accident, contained .17 per cent alcohol. No evidence was offered on behalf of defendant. The court found defendant guilty, then suspended proceedings and granted probation. Defendant is appealing from the order granting probation, which is reviewable as an appeal from the judgment. Defendant has also purported to appeal from the order denying his motion for a new trial, from which no separate appeal is allowed. (Pen. Code, § 1237.)

---

[1] "§ 23101. Any person who, while under the influence of intoxicating liquor, drives a vehicle and when so driving does any act forbidden by law or neglects any duty imposed by law in the driving of such vehicle, which act or neglect proximately causes bodily injury to any person other than himself is guilty of a felony and upon conviction thereof shall be punished by imprisonment in the state prison for not less than one year nor more than five years or in the county jail for not less than 90 days nor more than one year and by fine of not less than two hundred fifty dollars ($250) nor more than five thousand dollars ($5,000)."

The record contains evidence of the following circumstances:

Defendant, driving northbound on Harbor Boulevard near the City of Ventura about 5:30 p. m. on February 8, 1963, collided with a southbound vehicle. The driver of the latter vehicle sustained a broken leg and other bodily injuries. Harbor Boulevard is a two-lane road, each lane being 12 feet in width, with a 7-foot improved shoulder on each side. It was raining. Visibility was obscured, but it was not yet dark enough that cars were using headlights. Southbound traffic was heavy.

Deputy Sheriff Miley testified at the preliminary examination that immediately prior to the collision he and his partner were driving the second car ahead of defendant in the northbound lane about 55 miles an hour. Deputy Miley observed in his rear-view mirror that defendant was driving about 5 to 10 feet behind the car which was following the sheriff's car. Defendant was "right on the other car's tail." Deputy Miley saw defendant make three or four attempts to pass the car ahead. On the final attempt, defendant pulled out to his left and when he was about even with the bumper of the car ahead, he ran head-on into the southbound vehicle. The deputies stopped, turned back, and gave first aid to the occupants of the wrecked vehicles.

Deputy Miley observed defendant's condition and talked with him immediately after the accident. His breath was alcoholic and his face was flushed. The deputy was of the opinion that defendant was under the influence of alcohol. No field tests for sobriety were attempted.

Dr. David Warren Brown, resident physician at the County Hospital, examined defendant in the emergency room between 8 and 9 p. m. With defendant's consent Dr. Brown took a blood sample, which was turned over to a highway patrolman. Dr. Brown conversed with defendant and treated the abrasions and lacerations on defendant's head, neck and body. Defendant said he had been drinking. He had the smell of alcohol on his breath. Dr. Brown testified: "I felt, according to my examination and the way the patient responded to questioning, and his answers that he gave to questions, and also his general performance doing simple things during the examination, that he was probably under the influence of alcohol."

The "Intoxication Report" prepared by the state highway patrol officer who observed defendant at the hospital noted that defendant's speech was "slurred."

Dr. Gerald K. Ridge testified that he was a licensed physician experienced in forensic chemistry for law enforcement agencies. In the opinion of Dr. Ridge, any person whose blood alcohol is as much as .10 per cent is sufficiently under the influence of alcohol to impair his skills and render him an unsafe operator of a motor vehicle. Dr. Ridge testified: "So far as I know, there is no essential disagreement with this level among the authorities in this field here in this country. The previous level prior to about two years ago was .150, which was based upon work that had been done up to that time."

The evidence is sufficient to support the trial court's finding that at the time of the collision defendant was under the influence of intoxicating liquor within the meaning of Vehicle Code, section 23101. Defendant's attack on the evidence is no more than an argument as to the weight of the evidence and as to what inferences should be drawn from the uncontradicted facts. Such an argument is foreclosed by the familiar rule that the appellate court must assume in favor of the judgment every fact which the trial court could reasonably have deduced from the evidence. (*People* v. *Redrick,* 55 Cal.2d 282, 289 [10 Cal.Rptr. 823, 359 P.2d 255]; *People* v. *Daugherty,* 40 Cal.2d 876, 884-885 [256 P.2d 911].) This court cannot say that the trial court could not reasonably have inferred that defendant was under the influence of alcohol at the time of the collision.

Defendant also attacks the conviction upon the ground that the information fails to state a public offense. The information here states: "The District Attorney of the County of Ventura hereby accuses JAMES PHILLIP JOHNSON of the crime of violation of section 23101 of the Vehicle Code in that on or about February 8, 1963, in the County of Ventura, State of California, while under the influence of intoxicating liquor, he did drive a vehicle and when so driving did an act forbidden by law in the driving of such vehicle, which act proximately caused bodily injury to Emilliano Reynaldo Leonis."

Defendant's position is that both the statute itself and the pleading, which is in the words of the statute, are lacking in the specific detail necessary to apprise the defendant of the conduct which is forbidden.

The criticism of section 23101 is that it refers to "any act forbidden by law . . . in the driving of such vehicle." Defendant argues that the section is defective in that it fails to

specify the acts which are forbidden. The cases upon which defendant relies for authority deal with a problem which is not involved in the application of this statute. *In re Peppers,* 189 Cal. 682 [209 P. 896], overturned a statute which forbade the shipment of oranges "when frosted to the extent of endangering the reputation of the citrus industry, if shipped." The court concluded that a shipper could not reasonably be expected to know enough about the reputation of the citrus industry to know which oranges would endanger that reputation.

*People* v. *McCaughan,* 49 Cal.2d 409 [317 P.2d 974], involved a statute which made it a crime to be guilty of harsh or unkind treatment of an insane person. The court reviewed the various meanings of the words "harsh" and "unkind," and concluded that those words "do not provide an ascertainable standard of conduct or a workable standard of guilt." (49 Cal.2d at p. 416.)

*In re Newbern,* 53 Cal.2d 786 [3 Cal.Rptr. 364, 350 P.2d 116], declared void that portion of Penal Code, section 647, which declared that "Every common drunkard" is punishable as a vagrant. After examining the various possible meanings of the words of the statute, the court concluded the words "common drunkard" were unconstitutionally vague, uncertain and incapable of being uniformly enforced.

The language which defendant criticizes in Vehicle Code, section 23101, does not have a variety of meanings in common usage. A statute does not lack precision when it refers to "any act forbidden by law . . . in the driving of such vehicle." Every operator of a motor vehicle is required to know what acts are forbidden by law. This standard is not vague or uncertain. This is the standard of conduct imposed upon every driver, whether or not he is under the influence of alcohol.

Defendant points to a dictum in *People* v. *Clenney,* 165 Cal.App.2d 241, 253 [331 P.2d 696], that the phrase "any act forbidden by law . . . in the driving of such vehicle" should be construed to mean only acts forbidden by the Vehicle Code.[2] Defendant's argument is that the statute is incapable of being understood because "defendant does not and cannot be held to know that the Court in *People* v. *Clenney,* 165 Cal.App.2d 241 [331 P.2d 696], has limited the act to those encompassed in the Vehicle Code." Defendant's argument

---

[2] The court was referring to section 501 of the old Vehicle Code, the language of which is in this respect identical with section 23101 of the present code.

overlooks a truism of statutory construction: the court did not limit the statute; it only pointed out a limitation which it found in the law.[3]  Almost every portion of the criminal law is on occasion construed by the courts in language other than that used by the Legislature; but the fact that the courts do construe and explain the language of the codes does not, ipso facto, brand the code language as void for indefiniteness.

The statutory definition of involuntary manslaughter furnishes an analogy for the language of Vehicle Code, section 23101.  Since 1850, one of the statutory elements of one kind of manslaughter has been ''the commission of an unlawful act.''  (Pen. Code, § 192; Stats. 1850, ch. 99, §§ 22, 25.)  The manslaughter statute does not attempt to specify the unlawful acts, other than to exclude felonies.  But the statute is not unconstitutionally vague, and an information charging the offense in the words of the statute is a proper pleading. (*People* v. *Wilson,* 78 Cal.App.2d 108, 114 [177 P.2d 567]. Cf. *People* v. *Pearne,* 118 Cal. 154 [50 P. 376].)

In *People* v. *Clenney, supra,* a prosecution for violation of Vehicle Code, section 501 (the predecessor of present section 23101) where the defendant demurred to the information upon the ground of uncertainty, the court held that the demurrer should have been sustained so as to compel the People to allege what act was done in violation of law or what duty was neglected.  The opinion also states: ''If the defendant does not demur, the pleading in the terms of the statute would be sufficient under section 952 of the Penal Code.'' (165 Cal.App.2d at p. 254.)

In the present case the information charges the offense in the words of the statute, thus complying with Penal Code, section 952.[4]  Defendant did not demur.  He did not

---

[3]The language of the statute does indeed contain a limitation: it refers to any act forbidden by law *in the driving of such vehicle*. There is no need to consider now whether all of the prohibitions which apply to driving a motor vehicle are to be found in the Vehicle Code, as the *Clenney* opinion asserts, or whether some may be recorded elsewhere in the law.  That issue is not pertinent here.

[4]Penal Code, section 952, reads: ''In charging an offense, each count shall contain, and shall be sufficient if it contains in substance, a statement that the accused has committed some public offense therein specified.  Such statement may be made in ordinary and concise language without any technical averments or any allegations of matter not essential to be proved.  It may be in the words of the enactment describing the offense or declaring the matter to be a public offense, or in any words sufficient to give the accused notice of the offense of which he is accused.  In charging theft it shall be sufficient to allege that the defendant unlawfully took the labor or property of another.''

at any time or in any way suggest to the trial court that he was in doubt as to the kind of case he had to meet. The information meets the due process requirement that defendant receive adequate notice. Our system of pleading in felony cases relies in part upon the transcript of the preliminary examination which must be furnished to defendant to inform him of particular circumstances not shown by the information. (*People* v. *Anderson,* 55 Cal.2d 655, 657 [12 Cal.Rptr. 500, 361 P.2d 32].) The testimony of Deputy Sheriff Miley, given at the preliminary examination, clearly and positively accused defendant of passing another vehicle without sufficient clearance for oncoming traffic, in violation of Vehicle Code, section 21751. All the People's evidence in this case, except only the opinion of the blood-alcohol expert, was in writing and in the possession of defendant before the trial, and the trial was conducted by stipulation upon this written record. It would be fatuous to assert that defendant lacked knowledge of the charge against him or that he was prejudiced by any omission of fact from the accusatory pleading. Defendant has made no such contention.

The judgment (order granting probation) is affirmed. The appeal from the order denying a new trial is dismissed.

Shinn, P. J., and Ford, J., concurred.